Sebastian Nicolas v. Garland is our next case for argument. Mr. Tillman. Good morning, Your Honor. Good morning, Your Honors, and may it please the court. My name is Daniel Tillman. I represent the petitioners in this case. Gaspar Sebastian Nicolas, the lead, as well as his wife, Manuela, and their two daughters, Anna and Joseline. The petitioners raise four issues for this court to review. All of which arise from the agency's denial of their applications for relief from removal in the forms of asylum under a U.S. Code 1158, withholding of removal under a United States Code 1253b3, and protection under the Torture Convention. The four issues the petitioners raise are, first, whether the petitioners suffered harm amounting to past persecution or established a well-founded fear of future persecution in Guatemala. Mr. Tillman. Yes, Your Honor. I'm concerned about the standard of review. Your brief says the agency made four errors, but that's not the question for us. The question is whether its decision is supported by substantial evidence, which your brief doesn't even mention. And this is your Thank you, Your Honor. Your Honor is correct, first of all, that I did not address that in my brief, and I apologize for that. I know that the respondent's brief does. As far as a substantial evidence standard, I do believe it applies to the first of the three issues that petitioners raise, but not to the fourth, which involves the motion to remand that was a purely legal argument as far as what the standard, what regulation the court should have been applying in considering that motion. So let me just be clear then. How independent is that fourth argument about the remand? Because what the Board finds with respect to that is that there was no reason that it could see that these points couldn't have been made earlier, so there was just no error in deciding not to send it back. Things need to be presented at a certain time. The Board treats it as though it's a motion to reopen, and it's very difficult to see why that's an abuse of discretion, assuming that's the evidence. It's somewhat internally contradictory. Did they report these things to the police? Did they not report these things to the police? And so the Board is essentially saying you had your chance. And then as to the other three, maybe not everybody would have found the way the immigration judge and the Board did, but somebody might have based on this evidence. There's a lot of law on how terrible things have to be to amount to persecution. The social group that was proposed, I think you would have a hard time fitting under our law, especially since social groups can't be defined simply by reference to the actions of the persecutor. They have to be like some kind of coherent social group. And then as for the CAT, there just isn't any evidence about governmental acquiescence or action. So on this standard of review, not like what would you do with their claim. The petitioners found credible. Nobody says they're bad people, but how do they fit in the statutory framework? Thank you, Your Honor. First of all, I agree. I also have concerns. I share Your Honor's concerns about the proposed particular social group. I did not have the case below, and I certainly would have defined it differently, which I think would have been helpful. So can we just take that aspect off the table then? Because if they can't show that whatever bad things happened to them were on account of one of those five elements in the statute, here it's social group, nobody's saying it's one of the other things, then they lose, right? Well, actually, Your Honor, there is also the political opinion argument, an imputed political opinion through his expression of his opposition to the gangs. So that's still something that's out there, and that actually goes back to the nexus issue. I think that that is a fact question. It's a determination that the agency makes based on the evidence in front of them. So that is absolutely subject to the higher standard on review. However, the way in which they overlooked some of the evidence, and this wasn't sufficiently explained earlier, but for example, the fact that the mother remained, and she was contacted about him. She was extorted as well, but she was never threatened. Right, but nothing that bad ever happened, is what the immigration judge said. And so a lot of countries from which applicants come are difficult places for the population as a whole, but you need more than that. You need something more particularized. Correct, Your Honor, and I think that that's, again, why the nexus question is important. So if I could ask, what was the best evidence that the petitioner publicly expressed these individuals that threatened him, that he did not wish to join them because they were bad people and did bad things, and he was against it? And the theory is that that is a political opinion? It is, Your Honor, in the context of Guatemalan society and the prominent role that these are not just regular street gangs. These are transnational criminal organizations, the MARA, which essentially acts as a pseudo-government, a surrogate government, especially in areas that the government does not effectively control, which, true, that is true of a lot of countries and a lot of parts of countries like Guatemala. But where the MARA is able to act with impunity, defying them is, in essence, perceived as a political statement. And that is also evidenced by the fact that, yes, this kind of crime is pervasive, unfortunately, and it does happen to a lot of people, but he was the one that was threatened with death. They said they would kill him and his family. When others in this case have been extorted, even though a lot of the actions are similar, that additional element of the life threat is not there. So the reason that he is singled out with that extra step, it's not just pay us money or we're going to do something bad. He is specifically told we will kill you, we will kill your family, his wife and his daughters. That is because he expressed his political opinion or they perceived that political opinion. So the line I'm having a little trouble drawing is a person who is in the middle of being extorted saying, I have an opinion that you're a bad person and you shouldn't be extorting me. Or they're in the middle of being robbed and they say, I don't support robbers. I mean, no one is going to support criminals in a society like that. And you're making a more sophisticated argument, which is that there is this shadow government, basically, in Guatemala, the MARA, and he's saying, I'm not an adherent to your shadow government. I prefer the regular government. But I don't see that developed and I don't see evidence in the record that was so plain that we would say the immigration judge committed some sort of error by not crediting it. Your Honor is correct. I think that as the record was being developed in this case, there is some evidence of this in the country conditions evidence that was submitted to the immigration court, but it was not highlighted throughout the proceeding as a ground to elaborate, I suppose. And so the result on a petition for review, if that's the case, is that we would not find error on the part of the immigration judge if nobody was telling the judge, you need to look at this. Well, Your Honor, I believe that that was addressed in the appeal to the Board of Immigration Appeals. It was not highlighted to the judge at trial. Your Honor is correct. But it was raised to the agency at a later stage. And Your Honors, I see that I've only got 30 seconds. I wanted to save some time for rebuttal. Certainly, Counsel. Thank you, Your Honor. Ms. Murphy. Good morning, and may it please the Court. My name is Shannon Murphy, and I represent the respondent, United States Attorney General. This Court should deny the instant petition of review for three reasons. First, in his opening brief, Nicholas waived any challenge to the agency's nexus determination, which is dispositive of both his applications for asylum and withholding of removal. Second, the agency's denial of Nicholas' application for cat protection is supported by substantial evidence. And finally, the agency properly denied Nicholas' motion to remand because he failed to comply with the pertinent regulations. To my first point, undeveloped arguments before this Court are deemed waived, particularly when there is no factual basis provided, and instead, the party only submits bare legal conclusions. And looking at Petitioner's nexus discussion in his opening brief at page 15, there is nothing more than a bare legal conclusion that the agency reached the wrong determination. Missing from the petitions is anything that explains what record evidence was missing or why the agency reached the improper decision. And Hernandez-Garcia v. Barr provides guidance on this issue. As this Court explained, absent any explanation as to why the agency reached the wrong decision results in a waiver. And because the nexus is dispositive of his application for asylum and withholding of removal, the petition for review should be denied with respect to those two applications. Now, he does seem to have preserved his argument, this little two-paragraph discussion of it in the Board's opinion, about the political opinion nexus. He's persecuted on account of his actual or imputed anti-gang political opinion. And the Board just says, well, he didn't engage in political activities. The Board seems to think the political activities have to be open and notorious somehow. Is that correct? I disagree, Your Honor. If we look at the Immigration Judge's decision, the Immigration Judge did provide the standard that there must be some express political activity. But when we look to the Board's decision on page 4 and 5, it shows that… How about page 6? The Board says, the record does not indicate that he belonged to a political organization demonstrated against the gangs or the Guatemalan government or otherwise engaged in any activity where a political opinion would be imputed to him. But maybe he did engage in at least the imputed branch of that by refusing to support the Mara folks. Yes, Your Honor. Well, on page 4 of the record, the Board does apply the standard of the imputed political opinion. And that's really looking at whether the actors in question are seeking some type of political opinion on the individual who is the target of their actions. But there's nothing within the record that demonstrates that the unknown callers were imputing some type of political opinion to him. As Your Honor, Judge Wood noted, if anything, this imputed political opinion did not develop until he later refused their demands to pay the money. But upon the initial calls that began in 2014, there's no indication that the callers were doing anything in terms of imputing a political opinion on him. It's quite clear as the agency determined that the callers were merely trying to fill a means to their end in order to gain money. And that's precisely the problem that exists throughout the record. And I think the generalized evidence that is supplied, including the extortion economy evidence and the discussion from the Department of State's 2017 Human Rights Report, really shows that the actors were simply trying to fill a means to their ends and get money for their groups. There's nothing within the record or from the petitioner's testimony that shows that he was having a political opinion imputed to him. The government's position is still that the petitioner has waived this nexus determination because there is no factual basis explaining why the agency should have concluded otherwise. While the petitioner makes, again, a legal conclusion that the agency reached the incorrect standard, there is nothing explaining what evidence should have compelled the agency to reach a different conclusion. And turning next to the petitioner's application for cat protection, the agency's denial is also supported by substantial evidence. Petitioner had to demonstrate a substantial risk of harm in his country of removal that would be committed by or with the Guatemalan government's acquiescence. But the petitioner's application for cat protection does fail on the first prong in that he cannot demonstrate a substantial risk of future harm. There is no evidence within the record, as the agency noted, that he was ever harmed in the past beyond these anonymous threats.  Yes, Your Honor. Threats at some point are reason to fear that kind of persecution. Of course, Your Honor. But this Court's standard for threats is that there must be some immediate or menacing nature to them, and the threats that the petitioner described do not seem to contain those factors. Don't you think a threat that I'm going to kill you is menacing? I mean, it seems to me most common sense would suggest it is. Your Honor, the threats occurred over a two-year period, and there was no specific action taken that would make the petitioner fear further. So you have the sword of Damocles hanging over your head for a two-year period before you flee for the United States. Or you ought to flee quickly in response to the first threat. Your Honor, I think—Your Honors, I believe that there is— there has to be some type of distinguishing factor. And if we look to NLA v. Holder, there the threats were combined with— threats were increasing in nature. They were becoming more frequent, and then there were actions taken. And while the government's position is not that the petitioner should wait for something to happen, there's no evidence that these unknown callers— again, they were anonymous. The petitioner did not know who they were or whether they would, in fact, ever harm him. But beyond that, there's— Do you think unknown threats of death over the phone, you know, are sort of inherently less concerning than if you know exactly who's calling you? Some random person that you don't even know to look out for in the street is saying bad things will happen of the types described. I think it depends on the facts within the record. If there were external activities that were occurring, but just based on these blanket general threats from unknown callers, these facts before the court are insufficient to demonstrate harm that is feared that would amount to torture. But additionally, the evidence of general crime within Guatemala is also not sufficient to demonstrate a substantial risk of future harm amounting to torture. And as the agency reasonably relied on that determination, their decision is supported by substantial evidence. And finally, my last point. The agency properly denied the motion to remand. As my opposing counsel contends that this is a legal error, the agency's decision should be reviewed under the abuse of discretion standard. And the agency did not abuse its discretion. It's well settled that motions to remand that are effectively motions to reopen based on the form of relief they are asking the board for should be reviewed under the pertinent regulations, which is 8 CFR 1003.2C. And that's also laid out in Matter of Coelho and recognized by this court in Darren Cullen. And if we look to the petitioner's motion to remand on page 60 of the administrative record, the petitioner also acknowledges that Matter of Coelho applies and that the motion to remand should be reviewed under the substantive motion to reopen regulations. But the petitioner did not provide any affidavit, which is required by 8 CFR 1003.2, explaining why this evidence was previously unavailable. While the evidence is from 2020, it discusses actions that occurred in 2016, and there is no explanation as to why this evidence could not have been received by the 2019 removal proceedings that the petitioner was placed in. And I think Darren Cullen v. Lynch is really instructive on this point because there, the petitioner's family obtained evidence after the petitioner was ordered removed. And this court recognized that there was absolutely no explanation why this type of evidence could not have been received prior to the hearing. There's no evidence that it was previously unavailable, and the board does not abuse its discretion in denying such a motion to remand. And for the foregoing reasons, this court should deny the petition for review. Thank you. Thank you, counsel. Anything further, Mr. Tolman? There is. Thank you, Your Honors. I just wanted to say three very quick things. One is to stress with regard to the political opinion, it was not just the refusal to pay, it was also the refusal to join, the refusal to support. As far as the ominous threats on the phone, there were also in-person threats on two separate occasions, and the wife was still called once she moved away to her own father's house after the lead petitioner had already fled the country. And finally, I see my time has expired. If I could... Thank you. Thank you, counsel. Thank you, Your Honor. Case is taken under advisement.